Patricia T. Stambelos (SBN 166998)
Stambelos Law Office
543 Country Club Dr., Ste B209
Simi Valley, CA 93065
Telephone: 805.578.3474
patricia@patriciastambelos.com

Attorneys for Plaintiff
AMANDA BALDINO-MILLER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA BALDINO-MILLER, on behalf of herself and all similarly aggrieved employees,<br><br>          Plaintiff,<br><br>  v.<br><br>COURTYARD MANAGEMENT CORPORATION; MARRIOTT INTERNATIONAL, INC.; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No. 1:23-CV-01613-BAM<br><br>**INDIVIDUAL CLASS AND REPRESENTATIVE ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, CIVIL PENALTIES AND INJUNCTIVE RELIEF** |

COMES NOW Plaintiff Amanda Baldino-Miller, who brings this First Amended Complaint and alleges against the above-captioned Defendants as follows:

1.      Plaintiff Amanda Baldino-Miller ("Plaintiff" or "Baldino-Miller") is a competent adult who is, and at all times mentioned in this complaint has been, a resident of Madera County, California. Plaintiff was employed by Defendants Courtyard Management Corporation ("Courtyard") and Marriott International, Inc. ("Marriott") (Courtyard and Marriott are collectively referred to herein as "Employer" or "Marriott") from approximately July 23, 2019 until July 8, 2022 pursuant to an unwritten contract, some of the terms of which were the product of an oral agreement, with other terms implied from or incorporated from written materials and policies maintained by the Employer and from the conduct of the parties. Plaintiff is, and at all relevant times was, an individual as defined in Business and Professions Code§§ 17201 and 17204.

2.     Defendant Courtyard is, and at all times mentioned in this complaint has been, a limited liability corporation and registered to do business in the State of California. Plaintiff is informed and believes and thereon alleges that Courtyard is authorized to and does conduct business throughout the State of California, has purposefully availed itself of the privileges and benefits of doing business in the County of Fresno, State of California, and thus is subject to jurisdiction in the County of Fresno, in the State of California.

3.     Defendant Marriott is, and at all times mentioned in this complaint has been, a corporation registered to do business in the State of California. Plaintiff is informed and believes and thereon alleges that Marriott is authorized to and does conduct business throughout the State of California, has purposefully availed itself of the privileges and benefits of doing business in the County of Fresno, State of California, and thus is subject to jurisdiction in the County of Fresno, in the State of California.

4.     Plaintiff is ignorant of the true names, identities, capacities and relationships of the Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by DOES 1 through 50. Plaintiff will amend this Complaint to allege the true names and capacities of said DOE Defendants when such information is ascertained. Each reference to "Defendants," and each reference to any particular Defendant herein, shall be construed to refer to all Defendants, including, but not limited to, all of those fictitiously named herein as a "DOE" Defendant, and each of them.

5.     Plaintiff is informed and believes, and thereon alleges, that each of the Defendants herein was at all times relevant to this action the agent, employee, representative, partner, and/or in a joint venture with the remaining Defendants, and each of them, and that each of the Defendants herein was at all times acting within the course and scope of that relationship. Plaintiff is further informed and believes, and thereon alleges, that each of the Defendants herein consented to, ratified, and/or authorized the acts of each of the remaining Defendants herein. The conduct of each of the Defendants was at all times herein in accordance with and represents the official policy of Defendants. Additionally, at all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants, which proximately caused the damages herein alleged. Plaintiff is further informed and believes, and thereon alleges, that all of the Defendants jointly employed Plaintiff and/or carried out a joint scheme, business plan and/or uniform policy, and the acts and omissions of

2

each Defendant are legally attributable to the other Defendants such that they are deemed a single integrated enterprise and agents of one another so that all Defendants are each jointly and severally liable for the acts and omissions hereinafter alleged.

6.   Defendants Courtyard, Marriott and DOES 1 through 50 (collectively referred to herein as "Defendants") are, and at all times herein were, "persons" as defined in California Business and Professions Code § 17201.

7.   At all times herein, Defendants directly or indirectly, or through an agent or representative, exercised control over Plaintiff's the wages, hours and/or working conditions and directly or indirectly or through an agent or other person engaged, suffered, or permitted Plaintiff to work.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over the individual claims in this action pursuant to diversity jurisdiction under 28 U.S.C. Section 1332(a).  Plaintiff is a citizen of California and brings this Complaint for violations of California law occurring in the County of Fresno, including without limitation violations of the California Labor Code, Business and Professions Code, Civil Code and common law, and the amount in controversy exceeds $75,000 with respect to Plaintiff's claims individually.  Based on information and belief, Defendants different states than the state of Plaintiff's citizenship.  Further, this Court has jurisdiction over the class claims pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1332(d) as (1) the proposed class contains at least 100 members; (2) the Defendants are not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.  The Court also has supplemental jurisdiction over the collective claims asserted under the Private Attorneys' General Act, because they form part of the same case or controversy as Plaintiff's individual claims, and because none of the exceptions in 28 U.S.C. Section 1367(c) to this Court's supplemental jurisdiction are applicable.  Accordingly, this Court has jurisdiction over the parties and claims in this matter.

9.   Pursuant to 28 U.S.C. Sections 84(c) and 1391, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.   Pursuant to California Labor Code § 2699.3, Plaintiff gave written notice to Defendants on or around December 15, 2022, by electronic filing with the Labor and Workforce Development

Agency, via e-mail to its Vice President and Assistant General counsel, and by certified mail to Defendant Marriott of factual and legal basis for the labor law violations alleged in this Complaint.

11.    Pursuant to California Labor Code § 2699.3, Plaintiff seeks all applicable penalties for violations which the Labor and Workforce Development Agency has failed or elected not to investigate and/or failed or elected not to issue a citation.  Plaintiff has exhausted all administrative remedies required by the Labor and Workforce Development Agency as a prerequisite to filing this action.

12.    Plaintiff has met all jurisdictional requirements for proceeding with her claims under the California Fair Employment and Housing Act (the "FEHA"), including without limitation, California Government Code §§ 12960 and 12965, by timely filing an administrative complaint against Defendants with the California Department of Fair Employment and Housing (the "DFEH") on or about May 24, 2022 and on the same date received a right-to-sue notice.

## FACTUAL ALLEGATIONS – PLAINTIFF'S INDIVIDUAL CLAIMS

13.    On July 22, 2019, Plaintiff was hired as the Assistant General Manager of the Courtyard by Marriott property located at 140 East Shaw Avenue, Fresno, California, 93710.  She worked in that role from on or about July 23, 2019 until July 8 2022.  She reported to Julee May ("May"), the Dual General Manager of the property and also of the Marriott Residence Inn Fresno property.  Plaintiff's shifts at the hotel property were 8.5 hours and were scheduled by May.  She was also expected to and did perform duties outside of these "scheduled" hours.

14.    From on or about February 2020 through December 2021 (the "Covid Period"), Defendant laid off all or almost all of its non-exempt staff at all of its hotel properties due to Covid-19, Plaintiff and the other exempt-classified employees were forced to perform all the functions in the hotel, both exempt and non-exempt.  For Plaintiff, this included running the Bistro – ordering supplies, making beverages and food, serving customers, balancing the cash drawer, and all related duties – and performing front desk shifts, in addition to all of her other "management" duties.

15.    In or about 2013, Plaintiff was diagnosed with Ehlers-Danlos syndrome which, over time, caused her to have issues with her ankle.

16.    In February or March 2021, Plaintiff's office was renovated with leftover materials from the hotel renovation.  The old office was dark, dingy, and dirty.  The carpet was  approximately 15 to 20 years old.  The office door had holes in it.  The newly renovated office was bright, airy and clean and had a door without holes and tinting on the window allowing her privacy from the guests seeing into her working space.

17.     By March 2021, Plaintiff's ankle condition was making it increasingly more difficult to walk.  At her doctor's direction, Plaintiff began wearing an ankle stabilization boot and received numerous injections.  In or around this time, if not prior, Plaintiff advised May of her condition and that it sometimes made it painful and difficult to do extensive walking around the property and/or engage in long hours of standing.  Plaintiff provided May with a letter from her medical provider confirming her difficulty walking and indicating a restriction from performing daily room inspections.  Plaintiff requested to be accommodated.

18.     Shortly after requesting this accommodation, May instructed Plaintiff to move out of her newly renovated office to an unrenovated office just behind the front desk area.  The office did not have a tinted window which meant that Plaintiff could not open the window because guests could look in as the window faced the cashier at the front of the hotel.  May also reassigned some of Plaintiff's management duties over the housekeeping staff to the Maintenance Manager, Miguel Midrano ("Midrano").

19.     Plaintiff is informed and believes and thereon alleges that May instructed Midrano, who was also one of Plaintiff's superiors, to perform some (but not all) of Plaintiff's room inspections and elevated him to Maintenance and Housekeeping Manager.  However, despite her medical restriction and request for a reasonable accommodation, Plaintiff was still obligated and directed to perform room inspections and regularly received e-mails informing her that her inspection numbers were lower than required and must increase.

20.     In early June 2021, Plaintiff advised May of her increasing pain and inability to perform room inspections and to work front desk positions/shifts requiring her to stand and/or walk for extended periods of time.  May had no discussion with Plaintiff about any accommodations or options and made no additional changes to Plaintiff's work duties or schedule.

21.     By mid-June, 2021, Plaintiff noticed that Midrano's attitude towards her was growing increasingly antagonistic and angry, and he began to engage in a campaign of retaliation against her at being tasked to do more room inspections because of her restrictions.  For example, among other actions, on or about June 21, 2021, Midrano put a lock on the air conditioning control in Plaintiff's office (and only in Plaintiff's office) so she could not control the temperature.  In control of the unit, Midrano then set her office temperature at or around 90° causing Plaintiff to be very uncomfortable.  Despite Plaintiff's complaints and requests that the temperature be reduced, her office continued to be 85°-90° for approximately two weeks.  Plaintiff complained to May, Midrano, and others but received no responses and no resolution.

5

22.    On June 24, 2021, Plaintiff's ankle condition was worsening, and her doctor placed her on "light duty," indicating that she should not stand or walk for extended periods of time due to the worsening disabling condition of her right ankle/foot.  Plaintiff advised May.  Still, no conversation took place, and her duties were not altered or reduced in any way.  While assigned to the front desk or covering for another worker at the front desk (which she was required to do in her role as Assistant General Manager), Plaintiff was required to stand, regardless of whether doing so violated her work restrictions.

23.    On or about June 30, 2021, Midrano reduced Plaintiff's office temperature to 60°.  She complained to May and Midrano, to which Midrano responded, "Well, at least it's not hot."  Plaintiff had her husband come and repeatedly cover the A/C vent with cardboard, but each time she returned to her office the cardboard had been removed.  Despite Plaintiff's repeated complaints, her office temperature remained at 60° from June 30, 2021 through October 26, 2021, and there was nothing Plaintiff could do about it.  The cold worsened Plaintiff's ankle/foot pain.

24.    In early October, Plaintiff informed May that her condition required surgery and requested a leave of absence (LOA) starting on October 26, 2021.  May seemed to agree that Plaintiff could take the time off but did not provide any LOA or other paperwork for Plaintiff to complete.  Nor did she provide Plaintiff with any insight regarding the amount of time to which she was entitled, information as to how her paid time off would be allocated and used during her LOA, or any information about her health and welfare insurance benefits continuation during the LOA.  Despite that May did not request a copy of Plaintiff's doctor's note placing her off work, Plaintiff left a copy of the letter under May's office door on October 25, 2021.

25.    On October 26, 2021, Plaintiff had ankle reconstruction surgery.

26.    On or about November 13, 2021, May sent Plaintiff paperwork to apply for an LOA under the Family Medical Leave Act (FMLA), which Plaintiff completed and returned on November 15, 2021.  Still, she received no information about her health insurance coverage or about payment for health insurance premiums, or any other information.

27.    On February 1, 2022, Plaintiff received a letter confirming Marriott's approval of her FMLA LOA from January 18, 2022 through March 2, 2022.  The letter indicated that if she was utilizing paid time off during her absence, the amounts paid would be utilized towards her health insurance premium contributions and, if not, she would receive a billing statement for the premiums.

28.    On March 8, 2022, Plaintiff received an electronic invoice from Marriott indicating that she owed $565.72 for health insurance premium contributions.

6

29.     On March 11, 2022, Plaintiff received a bonus check from which Marriott withheld $636.86 for insurance premiums despite that only approximately $565.72 was owed.

30.     Since the premiums had been paid via deductions, she relied on her medical insurance benefits for her ongoing care.

31.     On or about April 20, 2022, Plaintiff received a letter dated April 8, 2022, indicating that all of her health and welfare benefits had been cancelled retroactively back to December 24, 2021 due to non-payment of premiums.  She immediately called Marriott International to find out why her benefits had been cancelled.  The representative confirmed that she was carrying a credit on her account and needed to investigate the reason for the cancellation.

32.     On April 22, 2022, Plaintiff received an automatically generated e-mail from Marriott informing her benefits coverage had been reinstated and that her service request had been completed. Nothing was said about any overpayment.  When Plaintiff checked her employee benefits portal, however, it indicated she had no coverage.

33.     Unfortunately, Plaintiff's insurance had not been reinstated, causing her to incur medical expenses without insurance coverage.

34.     In early May 2022, Plaintiff's doctor released her to return to work full-time, three days per workweek in person at the property and two days per week remotely.  The doctor's note also indicated that she should not stand more than once for 1-2 hours in any work shift.

35.     Up until this time, and for all others, Marriott had a robust commitment and expectation that workers classified as "exempt" were expected and able to work at home, including after hours and during their "days off."  Plaintiff was given a laptop computer for this purpose.  Additionally, during Covid-19, when the guest count at the property remained low, Plaintiff was encouraged to perform any necessary administrative functions and duties at home rather than at the property.  A significant portion of Plaintiff's duties could just as easily be performed remotely.

36.     Despite that she could perform all of her essential job functions with the restrictions and accommodations outlined by her medica provider, Plaintiff's accommodation request to work remotely two days per week was denied, without any interactive process or other discussion regarding alternative potential accommodations.  Instead, May unilaterally reduced Plaintiff's work schedule and pay so that she was permitted and "scheduled" to work only three days per week, on many of which she was "assigned" a front desk shift, a non-exempt position.  She was scheduled to work from 10-6:30 but was paid for only 8 hours "per shift."  She did not receive a meal periods or any rest breaks because she was classified as an "exempt" employee.  She did not receive overtime pay.  She was required to keep a

timesheet. She was also, for the first time ever during her employment, required to leave her laptop at work when she left the property. Despite all of these changes and restrictions, she was held accountable to perform all of her full-time duties and was not paid for any additional worked time or overtime.

37. On May 13, 2022, Plaintiff received her first paycheck since her return from her FMLA LOA, and no money was withheld for benefits and her employee portal still indicated she had no insurance coverage. This was very alarming considering she just had surgery and required after-care. She called Marriott again and was told that the benefits were cancelled due to non-payment and could not be reinstated because she was on FMLA. She was informed that it is Marriott company policy that employees on FMLA are not entitled to continued benefits.

38. At some point, Plaintiff's benefits were reinstated but the company took all of the retroactive insurance premiums from her paychecks. Considering that May had reduced her schedule and her pay because of her restrictions, Plaintiff was left with almost no income during this period of time, and certainly well below the threshold for an exempt worker.

39. It took weeks and weeks, repeated calls and e-mails, and a significant amount of stress to resolve the insurance debacle. Not to mention that Plaintiff was required to pay cash for all medical services she received during the uncovered period.

40. While assigned to the front desk, or covering for another worker at the front desk, May still would not allow Plaintiff to be seated or otherwise be relieved from standing, despite that her return-to-work doctor's note indicated that this was a restriction.

41. May and Midrano were openly agitated towards Plaintiff about her return-to-work restrictions and engaged in repeated and ongoing retaliatory conduct which made Plaintiff extremely uncomfortable at work every day. On her first day back at work, May insisted that Plaintiff explain exactly what was wrong with her ankle/leg and demanded to know if she was wearing a brace. On May 18, 2022, all other employees received associate appreciation gifts, but Plaintiff did not. On the same day, May asked her at least five times about her foot, wanting to know when Plaintiff would see the doctor again, and to know "exactly what was wrong with it." She asked Plaintiff what Plaintiff was going to do if this "turns into a permanent disability" because her job "is a walking job." On May 20, 2022, May had more questions about her foot, her prognosis and when she will see the doctor again. Plaintiff was extremely uncomfortable and distressed by each and all of these interactions.

42. On or about July 8, 2022, Plaintiff could no longer emotionally or financially sustain remaining employed by Defendants, both the harassing, discriminatory and harassing treatment and the

significant reduction in her pay and work hours.  She was forced to resign and find alternative employment.

43.     Throughout all of her employment, Plaintiff was forced to spend more than half her time performing non-exempt tasks, including but not limited to, working specifically assigned front desk shifts, covering for front desk employee meal breaks, working all functions in the Bistro (including, but not limited to, creating the menu, making coffee and food, handling the day-to-day accounting and banking functions, cleaning, stocking, and more), performing accounts receivable, accounts payable, and banking/account reconciliation tasks, entering invoices, ordering hotel and Bistro supplies, taking inventory, performing all weekly payroll and payroll processing, verifying I-9 and other HR information for newly hired employees.

44.     Because Plaintiff was hired as a purportedly exempt employee, she did not receive any overtime pay; nor was she afforded the opportunity for meal periods and rest breaks.  Because of Plaintiff's misclassification as an exempt employee, Defendant failed to (a) pay minimum wage for all hours worked, (b) pay overtime wages, (c) provide compliant meal and rest periods and/or penalties for the failure to do so, (c) pay sick time at the appropriate regular rate of pay, and (d) provide compliant wage statements.

## CLASS ACTION AND REPRESENTATIVE ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of herself, the general public, and all other similarly situated persons as a class action pursuant to Code of Civil Procedure § 382.  All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law and, unless otherwise specified, cover the period from four (4) years prior to May 1, 2023 through the date of the order granting class certification (the "Class Period").

46.     To the extent that the conduct set forth above was experienced by others who were employed by Defendants in California during the Class Period, Plaintiff intends and seeks to represent their interests in this lawsuit together with her own.

47.     In addition to her individual claims outlined herein, Plaintiff seeks to represent subclasses (the "Class Members") composed of and defined as follows:

     a.    Misclassified AGM Subclass: All current and former employees who worked for Defendants in California in the position of Assistant General Manager (AGM).

     b.    Misclassified Exempt Subclass: All exempt employees who worked for Defendants in California during the Covid Period.

c.  <u>Waiting Time Penalty Subclass</u>: All exempt California employees of Defendants whose employment ended (either voluntarily or involuntarily) at any time from and after May 1, 2020.

48.     Pursuant to California Rule of Court 3.765(b), Plaintiff reserves the right to amend or modify the Class description, including by division into subclasses or limitation to particular issues.

49.     This action has been brought and may be properly maintained as a class action under the provisions of Code of Civil Procedure § 382 because the questions of law and fact at issue herein are common and of general interest to Plaintiff and the Class Members, the parties are numerous, and it would be impracticable to bring the claims alleged herein before the court as individual claims or through some other than a class action.

**Numerosity**

50.     The Class Members are so numerous that joinder of all the members of the class is not feasible and not practical.  While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believe that Defendants currently employ, and during the Class Period regularly employed more than 100 AGM's and more than 200 other exempt workers during both the Covid and the Class Period.  The identities of the Class Members are readily ascertainable by inspection of Defendants' employment records.  Moreover, joinder of all members of the proposed class is not practicable, and individual damages for each member is not anticipated to be sufficiently high to allow for practical resolution through individualized litigation.

**Commonality and Predominance**

51.     There are questions of law and fact common to each Class Member that predominate over any questions affecting only individual Class Members.  These common questions of law and fact include, without limitation:

(a)     Whether Defendants misclassified AGMs as exempt workers when the AGMs spent more than 50% of their work time in each workweek performing non-exempt duties.

(b)     Whether Defendants misclassified all exempt workers during the Covid Period when all exempt workers spent more than 50% of their work time in each workweek performing non-exempt duties.

(c)     Whether, as a result of misclassification, Defendants violated California Labor Code §§ 226.7 and 512 and the applicable IWC Wage Order by failing to provide a 30-minute duty-free meal period within the first five hours of each workday to Plaintiff and Class Members on days they

10

worked in excess of five hours, and failing to compensate Plaintiff and Class Members one hour of wages at their regular rate of pay for each such missed meal period that was not provided;

(d)    Whether, as a result of misclassification, Defendants violated Labor Code § 226.7 and the applicable IWC Wage Order by failing to provide a paid 10-minute duty-free rest period to Plaintiff and Class Members for every four-hour work period or major fraction thereof, and by failing to compensate Plaintiff and Class Members one hour of wages for such missed and/or unpaid/underpaid rest periods;

(e)    Whether, as a result of misclassification, Defendants violated Labor Code §§ 510, 558, 1194, and the applicable IWC Wage Order by failing to pay Plaintiff and Class Members overtime wages and at the properly calculated correct regular rate of pay;

(f)    Whether, as a result of misclassification, Defendants violated California Labor Code § 226 by failing to provide accurate itemized wage statements to Plaintiff and the Class Members containing all of the information required by Labor Code § 226;

(g)    Whether Defendants violated Labor Code §§ 201, 201.3, 202, 203, and 204 by failing to timely pay Plaintiff and the Class Members for all wages and hours worked during and after their employment;

(h)    Whether Defendants violated Labor Code § 1198 and the Wage Order for failing to keep accurate records with respect to each employee;

(i)    Whether Defendants' conduct as alleged throughout this complaint was willful or reckless;

(j)    The appropriate damages, restitution and/or monetary penalties resulting from Defendants' violations of California law;

(k)    Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive and declaratory relief, pursuant to Business and Professions Code §§ 17200 et seq.; and

(l)    Whether Defendants violated Business and Professions Code §§ 17200 et seq. by: (i) misclassifying AGMs at all relevant times; (ii) misclassifying all exempt workers during the Covid Period; (iii) failing to provide meal and rest periods by Labor Codes § 226.7, 512 and the Wage Order to Plaintiff and Class Members and failing to compensate Plaintiff and Class Members one (1) hour of pay for meal periods and rest periods that were not provided; (iv) failing to pay Plaintiff and Class Members overtime for hours worked in excess of 8 in a day and/or 40 in a workweek; (v) failing to compensate Plaintiff and Class Members for all hours worked at no less than minimum wage; (vi)

11

failing to provide complete and accurate wage statements to Plaintiff and the Class Members in accordance with Labor Code § 226; (vii) failing to pay Plaintiff and the Class Members all wages due upon termination; and (ix) failing to timely provide all wages due to Plaintiff and the Class Members in accordance with Labor Code § 201.3.

**Typicality**

52.     Plaintiff's claims of are typical of the claims of the Class Members.  Plaintiff and the Class Members sustained injuries and damages arising out of and caused by the Defendants' common course of conduct in violation of statutes, common law, wage orders and/or regulations that have the force and effect of law, as alleged herein.  Plaintiff has a well-defined community of interest with the Class Members and is qualified to, and will, fairly and adequately protect the interests of each Class Member.

**Adequacy of Representation**

53.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members.  Plaintiff acknowledges her obligation to make known to the Court any relationship, conflict or difference with any Class Member.  Plaintiff has incurred, and throughout this action will continue to incur, costs and attorney's fees necessarily expended for the prosecution of this action for the substantial benefit of each Class Members.  Counsel who represents Plaintiff is competent and experienced in litigating class actions, versed in the rules governing class action discovery certification, settlement and trial, and will vigorously and competently pursue the claims of Plaintiff and the Class Members.

**Superiority**

54.     The nature of this action makes the use of class action adjudication superior to other methods.  The class action will achieve economies of time, effort and expense as compared with separate individual lawsuits on behalf of each Class Member, and it will avoid inconsistent outcomes because the same issues will be adjudicated in the same manner and at the same time for the entire class.

**Public Policy Consideration**

55.     Employers in the State of California violate employment and labor laws on a daily basis. Employees are often intimidated and afraid to assert their rights out of fear that they will be subjected direct or indirect retaliation by their employers.  Former employees (those who are no longer employed by a particular employer who had subjected them to employment and labor law violations) are fearful of bringing actions against their former employers because they believe their former employers might damage their future endeavors through negative references and/or other means.  Class actions provide

Class Members who are not named in the complaint with vindication of their rights while also protecting their privacy and shielding them from retaliation.

## FIRST CAUSE OF ACTION

### Violation of Fair Employment & Housing Act - Discrimination

### (Cal. Govt. Code § 12940(a))

### (Plaintiff Baldino-Miller against Employer Defendants and DOES 1 through 10)

56. Plaintiff Baldino-Miller alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

57. At all times mentioned herein, the Fair Employment & Housing Act (the "FEHA"), California Government Code Section 12900, et seq., was in full force and effect and was binding on Defendants, as Defendants regularly employed five or more persons.

58. California Government Code Section 12940(a) prohibits an employer from discriminating against a person in compensation or in terms, conditions, or privileges of employment because of that person's physical disability or medical condition

59. As alleged herein, Defendants discriminated against Plaintiff Baldino-Miller on account of her Ehlers-Danlos syndrome and the resulting ankle/foot issues by treating her differently than prior to her disclosure of her medical condition and by demonstrating overt preferential treatment for other employees.

60. Under California law, a disability includes not only a current disability, but also being perceived or regarded by the employer as having or having had a condition that currently has no disabling effect but *may become* an impairment limiting the individual's ability to participate in major life activities in the future (including working). *See* California Government Code § 12926(j).

61. Defendants knew that Plaintiff had a disability even before she asked for time off for her surgery as she reported restrictions and requested accommodations that would allow her to continue to perform her essential job functions, which accommodations were in part denied and which resulted in daily aggressive and negative interactions from her supervisors, including Defendant May. At some point, Defendants were aware that Plaintiff that required a medical leave of absence. Thus, Defendants knew that Plaintiff had a disability covered under the FEHA.

62. Plaintiff's disability was a motivating factor in many of Defendant's improper decisions with respect to the terms and conditions of Plaintiff's employment including, but not limited to, it's decision to decision to refuse to engage in the interactive process, refusing to accommodate her initial

13

accommodation requests (in whole or in part), bullying and ostracizing her, refusing to advise her of her rights under CFRA/FMLA for intermittent or continuous leave, refusing to engage in the interactive process upon her return to work from leave and thereafter accommodate her upon her return to work, reducing Plaintiff's hours and pay, retaliation for Plaintiff's taking protected leave and requesting accommodations, among other adverse employment actions taken against her which were all improper.

63.    Thus, Defendants discriminated against Plaintiff because of her disability, in violation of California Government Code section 12940(a).

64.    The doctrines of equitable tolling and continuing violations apply to Plaintiff's claim of discrimination.

65.    As a direct, foreseeable, and proximate result of Defendants' disparate treatment of Plaintiff based on her disability and medical condition, she has suffered and continues to suffer compensatory damages, including without limitation, lost wages, loss of future earnings and earning capacity, loss of bonuses and deferred compensation, and loss of future advancement, in the amount of at least $25,000.00, according to proof at the time of trial, which is in excess of the jurisdictional minimum for this lawsuit to qualify as an unlimited civil action.  Plaintiff claims such amounts as damages, together with prejudgment interest accruing from the date of the filing of this action pursuant to California Civil Code Sections 3281 and/or 3288, and/or any other provision of law providing for prejudgment interest.

66.    As a direct, foreseeable, and proximate result of Defendants' discriminatory treatment against Plaintiff, she has been forced to hire attorneys to prosecute the claims alleged herein and has incurred, and is expected to continue to incur, attorneys' fees.  Pursuant to California Government Code Section 12965(b), Plaintiff Baldino-Miller requests the award of attorneys' fees against Defendants.

67.    Defendants' conduct as described above was willful, knowing, and intentional and done with reckless indifference to those statutorily protected rights of Plaintiff and others.  In engaging in such conduct, Defendants were guilty of malice, oppression, and fraud towards Plaintiff, thereby entitling Plaintiff to an award of punitive and exemplary damages in an amount to be proven at trial.

68.    WHEREFORE, Plaintiff requests relief as herein prayed for.

## SECOND CAUSE OF ACTION

### Violation of Fair Employment & Housing Act - Harassment

### (Cal.  Govt.  Code § 12940(j))

### (Plaintiff Baldino-Miller against All Defendants and DOES 1 through 10)

14

69.     Plaintiff Baldino-Miller alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

70.     California Government Code provides that it shall be unlawful for an employer or for any person to harass an employee because of a person's disability.  *See* Cal.  Gov't Code § 12940(j).

71.     As alleged above, during Plaintiff's employment with Defendants, Defendants intentionally engaged in harassment on the basis of Plaintiff's disability.  Defendants, including through their managers and supervisors, acted in a manner that was antagonistic to Plaintiff and which exhibited harassing motivations, intentions, and consciousness.  A reasonable person subjected to the harassing conduct would find, as Plaintiff did, that the harassment so altered Plaintiff's working conditions as to make it more difficult to do her job.

72.     The doctrines of equitable tolling and continuing violations apply to Plaintiff's claim of harassment.

73.     As a proximate result of Defendants' willful, knowing, and intentional harassment against Plaintiff, she has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

74.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

75.     Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.  Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

76.     WHEREFORE, Plaintiff requests relief as herein prayed for.


### THIRD CAUSE OF ACTION

**Violation of Fair Employment & Housing Act –**

**Failure to Prevent, Investigate, and Remedy Discrimination, Harassment and/or Retaliation**

**(Cal.  Govt.  Code § 12940(k))**

**(Plaintiff Baldino-Miller against Employer Defendants and DOES 1 through 10)**

77.     Plaintiff Baldino-Miller alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

15

78.     California law requires employers to "take all reasonable steps necessary to prevent" and correct wrongful behavior, including but not limited to, discriminatory and harassing behavior in the workplace.  *See* Cal.  Gov't Code §12940(k); *see also* Cal.  Gov't Code § 12940(j) ("Harassment of an employee … shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.").  Pursuant to this statute, Defendants were required to take all reasonable steps to prevent harassment, discrimination, and retaliation based on Plaintiff's disability.

79.     During the course of Plaintiff's employment, Defendants failed to prevent May, Midrano, and others from engaging in intentional actions that resulted in Plaintiff being treated less favorably, and subjected to harassment and a hostile work environment, because of Plaintiff's protected status (*i.e.*, disability).  Although Defendants were aware of the conduct, both because the conduct was, in part, being measured by management employees and because Plaintiff complained to their superiors about the unlawful conduct, Defendants made no effort whatsoever to correct the behavior, let along take immediate corrective action to prevent further harassment, discrimination, and/or retaliation against Plaintiff.

80.     As alleged herein and above, Defendants violated California law by failing to take all reasonable steps necessary to prevent the harassment, discrimination, and retaliation from occurring. *See* Cal.  Gov't.  Code § 12940(k).

81.     As a proximate result of Defendants' willful, knowing, and intentional failure to prevent, investigate or remedy harassment, discrimination, and retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

82.     As a proximate result of Defendants' willful, knowing, and intentional failure to prevent, investigate, or remedy discrimination, harassment, or retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

83.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

84.     Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.  Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

85.    WHEREFORE, Plaintiff requests relief as herein prayed for.

### FOURTH CAUSE OF ACTION

**Violation of California Family Rights Act – Including Interference and Retaliation**

**(Cal. Govt. Code § 12945.2 )**

**(Plaintiff Baldino-Miller against Employer Defendants)**

86.    Plaintiff Baldino-Miller alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

87.    Plaintiff was employed by Marriott for more than one year and had in excess of 1250 hours of service during the 12-month period immediately preceding her need for medical leave. Plaintiff was employed at a worksite where Marriott employs at least fifty (50) employees within seventy-five (75) miles.

88.    2 California Code of Regulations section 11091(a)(1)(A) states that "[u]nder all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying, based on information provided by the employee or the employee's spokesperson, and to give notice of the designation to the employee."

89.    CFRA further states that "[i]t shall be an unlawful employment practice for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under [CFRA]." Cal. Gov't Code § 12945.2(t).

90.    Defendants became aware of Plaintiff's medical condition and her restrictions and limitation but failed to advise Plaintiff of her right to protected time off – either intermittent or continuous within the time period prescribed by the statute or at all.

91.    The CFRA provides that "Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon granting the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave." Cal. Gov't Code § 12945.2(a).

92.    The CFRA statute further provides that "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against, any individual because of . . [the] individual's exercise of the right to family care and medical leave provided by [CFRA]." Cal. Gov't Code § 12945.2 (l)(1).

93.    Defendants violated Plaintiff's statutory rights by, among other things, failing to return Plaintiff to a position with the same duties and pay as the position held prior to the leave. Instead, Plaintiff was required to work scheduled front desk shifts, keep a timecard and her work hours and duties were reduced, as was her pay.

17

94. Defendants also discriminated against Plaintiff for exercising her right to such time off, including by berated her, demanding medical information and threatening her job security.

95. The CFRA statute also provides that, "during any period that an eligible employee takes leave pursuant to subdivision (a) or takes leave that qualifies as leave taken under the FMLA, the employer shall maintain and pay for coverage under a "group health plan," as defined in Section 5000(b)(1) of the Internal Revenue Code, for the duration of the leave, not to exceed 12 workweeks in a 12-month period, commencing on the date leave taken under the FMLA commences, at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of the leave." Cal. Gov't Code § 12945.2(e)(1).

96. Defendants failed to afford Plaintiff continued medical insurance coverage at the level and under the conditions that coverage would have been provided if she had continued in employment continuously for the duration of the leave, causing her monetary damages, reduced medical attention, and emotional distress.

97. As a direct and legal result of Defendants' conduct Plaintiff suffered and will suffer general and special damages including, but not limited to lost earnings and wages, medical expenses and coverage, damage to her reputation, pain and suffering, humiliation, embarrassment, mortification, hurt feelings, and emotional distress in an amount not yet fully known, but in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

98. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

99. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

100. WHEREFORE, Plaintiff requests relief as herein prayed for.

### FIFTH CAUSE OF ACTION

**Violation of Fair Employment & Housing Act – Failure to Accommodate**

**(Cal. Govt. Code § 12940(m))**

**(Plaintiff Baldino-Miller against Employer Defendants and DOES 1 through 10)**

101. Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

102.    At all times mentioned herein, the Fair Employment & Housing Act (the "FEHA"), California Government Code Section 12900, et seq., was in full force and effect and was binding on Defendants, as Defendants regularly employed five or more persons.

103.    An employer that is aware of an employee who has a disability has an affirmative duty to make reasonable accommodations for that disability. *See* Cal. Gov't Code § 12940(m). The duty arises even if the employee has not requested reasonable accommodation.

104.    A continuous or intermittent leave of absence can be a form of reasonable accommodation under FEHA, as can be a change in an employee's hours of work, location of work or type of work assignments so long as the employee can perform all of the essential job functions, with or without an accommodation.

105.    On multiple occasions, Plaintiff provided Defendants with doctor's notes verifying that she was disabled and was requesting accommodations. Thus, Defendants knew that Plaintiff was suffering from a disability covered under the FEHA.

106.    Plaintiff was able to perform the essential job duties of her position with reasonable accommodations for her disability. At all times during Plaintiff's employment with Defendants, Plaintiff was qualified to do her job.

107.    Plaintiff asserted rights pursuant to the FEHA, requesting reasonable accommodation from Defendants for her disability, including, but not limited to, requests to reduce the number of room inspections, have the ability to sit during periods of assignment at the front desk, less walking, work from home/remotely, work from home, and requests for time off, among other things. As alleged herein, Defendants failed to provide PLAINTIFF with reasonable accommodations for her disability.

108.    As a proximate result of Defendants' willful, knowing, and intentional conduct as alleged herein, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits, and has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

109.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

110.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

111.    WHEREFORE, Plaintiff requests relief as herein prayed for.

## SIXTH CAUSE OF ACTION

**Violation of Fair Employment & Housing Act – Failure to Engage in the Interactive Process**

**(Cal. Govt. Code § 12940(n))**

**(Plaintiff Baldino-Miller against Employer Defendants and DOES 1 through 10)**

112.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

113.    It is unlawful under the FEHA for an employer to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations for an employee with a known disability. *See* Cal. Gov't Code §§ 12940(n); 12926.1(e).

114.    Under the FEHA, employers who are aware that an employee has a disability have an affirmative duty to engage in the interactive process to identify and provide reasonable accommodations for such disability. The duty arises even if the employee has not requested reasonable accommodation. In particular, employers are obligated to initiate a timely, good-faith interactive process to accommodate an employee's disability when the employer has become aware of the possible need for an accommodation because the employee with a disability has exhausted leave under the CFRA for the employee's own serious health condition or the employee's healthcare provider indicates that further accommodation is still necessary for recuperative leave or other accommodation for the employee to perform the essential functions of the job. *See* Cal. Code Regs., tit. 2, § 11069(b).

115.    The FEHA requires a timely, good faith, interactive process between an employer and an employee with a known disability, which includes the exchange of essential information "without delay or obstruction of the process." Cal. Code Regs., tit. 2, § 11069(a).

116.    As part of a timely, good-faith interactive process, an employer "shall analyze the particular job involved and the essential functions of the job." *See* Cal. Code Regs., tit. 2, § 11069(c)(5). An employer "shall identify potential accommodations and assess the effectiveness each would have in enabling the applicant to have an equal opportunity to … perform the essential function of the position held." Cal. Code Regs., tit. 2, § 11069(c)(7). An employer "shall either grant the applicant or employee's requested accommodation, or reject it after due consideration, and initiate discussion with the applicant or employee regarding alternative accommodations." Cal. Code Regs., tit. 2, § 11069(c)(1).

117.    Defendants knew that PLAINTIFF was suffering from a disability covered under California Government Code § 12926(j).

20

118.    As alleged above, Defendants failed to engage in the interactive process with Plaintiff to determine what accommodations, other than limited medical leave, would enable Plaintiff to perform the essential functions of her position. Instead, Defendants denied her requested accommodations, refused to abide by accommodations it said it would grant, delayed and failed to advise Plaintiff of her right to intermittent and/or continuous leave as an accommodation, delayed advising her of her rights while taking time off for her medical condition, among other things.

119.    Defendants' conduct violated the FEHA's requirement to engage in a timely, good faith interactive process in response to PLAINTIFF'S requests for reasonable accommodation. See Cal. Gov't Code § 12940(n).

120.    As a direct and legal result of Defendants' conduct Plaintiff suffered and will suffer general and special damages including, but not limited to lost earnings and wages, medical expenses and coverage, damage to her reputation, pain and suffering, humiliation, embarrassment, mortification, hurt feelings, and emotional distress in an amount not yet fully known, but in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

121.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

122.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

123.    WHEREFORE, Plaintiff requests relief as herein prayed for.

### SEVENTH CAUSE OF ACTION

**Aiding, Abetting, Inciting, Compelling, or Coercing Acts Forbidden**

**by Fair Employment & Housing Act**

**(Cal. Govt. Code § 12940(i))**

**(Plaintiff Baldino-Miller against All Defendants and DOES 1 through 10)**

124.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

125.    The FEHA provides that it is unlawful for "any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under [the FEHA], or to attempt to do so." Cal. Gov't Code § 12940(i).

21

126.    At all relevant times, Defendants and their agents, including May, knew or should have known that Plaintiff had rights pursuant to FEHA, to be free from discrimination, harassment and retaliation, and to take CFRA leave.  They also knew, or should have known, that Plaintiff was entitled to receive reasonable accommodations for her disability, and that they were obligated to engage in the interactive process to identify a reasonable accommodation.

127.    As alleged herein, Defendants and their agents, including May, assisted, supported, facilitated, participated in, encouraged, and/or urged, forcefully, with overwhelming pressure, and/or with threats, the violation of the FEHA by discriminating, harassing and retaliating against Plaintiff.

128.    As a result, Defendants and their agents, including May, aided, abetted, incited, compelled, and/or coerced the doing of acts forbidden under the FEHA, or attempted to do so, in violation of California Government Code section 12940(i).

129.    As a direct and legal result of Defendants' conduct Plaintiff suffered and will suffer general and special damages including, but not limited to lost earnings and wages, medical expenses and coverage, damage to her reputation, pain and suffering, humiliation, embarrassment, mortification, hurt feelings, and emotional distress in an amount not yet fully known, but in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

130.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

131.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.  Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

132.    WHEREFORE, Plaintiff requests relief as herein prayed for.

## EIGHTH CAUSE OF ACTION

### Retaliation for Opposing Practices Forbidden by Fair Employment & Housing Act

### (Cal.  Govt.  Code § 12940(h))

### (Plaintiff Baldino-Miller against Employer Defendants and DOES 1 through 10)

133.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

134.    At all times herein mentioned, the FEHA was in full force and effect and was binding on Defendants.  This statute requires Defendants to refrain from retaliating against any employee for

22

opposing practices forbidden by the FEHA or who asserts rights under FEHA, including complaining of discrimination or harassment on the basis of disability, among other things.

135.    Defendants, through their agents and supervisors, took actions and spoke to and about Plaintiff in a manner that exhibited discriminatory, harassing and retaliatory motivations, intentions, and consciousness.

136.    As alleged herein and above, during Plaintiff's employment with Defendants, Defendants intentionally engaged in discrimination and harassment, about which Plaintiff complained to Defendants, including complaints about not being accommodated for her disabilities and being retaliated against and discriminated against because of her protected status.

137.    The doctrines of equitable tolling and continuing violations apply to Plaintiff's claims of retaliation.

138.    As a direct and legal result of Defendants' conduct Plaintiff suffered and will suffer general and special damages including, but not limited to lost earnings and wages, medical expenses and coverage, damage to her reputation, pain and suffering, humiliation, embarrassment, mortification, hurt feelings, and emotional distress in an amount not fully known, but in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

139.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

140.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.  Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

141.    WHEREFORE, Plaintiff requests relief as herein prayed for.

## NINTH CAUSE OF ACTION

### Wrongful Termination (Constructive Discharge) in Violation of Public Policy

### (Plaintiff Baldino-Miller against Employer Defendants and DOES 1 through 10)

142.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

143.    At all times alleged herein, Plaintiff was subjected to working conditions that violated public policy, including but not limited to violations of her rights under the FEHA, CFRA, and Business and Professions Code section 17200, among other statutory and constitutional rights.

144.    At all times alleged herein, Defendants intentionally created or knowingly permitted these working conditions.

145.    These working conditions, as set forth herein, were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to resign.

146.    Plaintiff resigned her employment because of the working conditions described herein.

147.    As a direct and legal result of Defendants' conduct Plaintiff suffered and will suffer general and special damages including, but not limited to lost earnings and wages, medical expenses and coverage, damage to her reputation, pain and suffering, humiliation, embarrassment, mortification, hurt feelings, and emotional distress in an amount not yet fully known, but in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

148.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Pursuant to California Government Code section 12965(b), Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

149.    Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff.  Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

150.    WHEREFORE, Plaintiff requests relief as herein prayed for.

## TENTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress and/or Negligent Infliction of Emotional Distress**
**(Plaintiff Baldino-Miller against All Defendants and DOES 1 through 10)**

151.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

152.    The conduct complained of above was outside the conduct expected to exist in the workplace, was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress.  Defendants, and each of them, engaged in such conduct and/or confirmed and ratified the complained of conduct, all such actions performed with the knowledge that Plaintiff's emotional and physical distress *would* thereby increase, and with a wanton and reckless disregard of the consequences to Plaintiff.

153.    As a proximate result of Defendants' conduct and by their intentional infliction of emotional distress as alleged herein, Plaintiff has been harmed in that Plaintiff has suffered humiliation, mental anguish, and emotional and physical sickness, and has been injured in mind and health.  As a

24

result of said distress and consequent harm, Plaintiff has suffered such damages in an amount in accordance with proof.

154. In the alternative, if said conduct of Defendants, and each of them, and of their agents and employees of found not to have been intentional, it was negligent, and Plaintiff is thereby entitled to general damages for the negligent infliction of emotional distress.

155. Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights of Plaintiff. Plaintiff is thus entitled to punitive damages from Defendants in an amount according to proof.

156. WHEREFORE, Plaintiff requests relief as herein prayed for.

## ELEVENTH CAUSE OF ACTION

### Failure to Provide Meal Periods or Compensation in Lieu Thereof

### (Labor Code §§ 226.7, 1198 and IWC Wage Order)

### (Plaintiff and the Misclassified AGM and Exempt Subclasses against Employer Defendants)

157. Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

158. California Labor Code § 226.7 provides that no employer shall require an employee to work during any meal period mandated by an applicable order of the Industrial Welfare Commission. Labor Code § 226.7 further provides that if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided.

159. At all times relevant to this action, the applicable IWC Wage Order and California Labor Code § 1198 provided that an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.

160. Throughout the Class Period, Defendants and/or their authorized representatives, including May, repeatedly failed to comply with the meal period requirements of the Labor Code and the IWC Wage Order by failing to provide Plaintiff and Class Members with a thirty (30) minute uninterrupted duty-free meal period within five (5) hours of the beginning of their shift, in violation of

25

Labor Code §§ 512, 226.7, and the Wage Order. Defendants also failed to compensate Plaintiff and Class Members one (1) hour of wages for any of the missed meal periods not provided, as alleged above, which failure also violated Labor Code §§512 and 226.7 and the Wage Order.

161.    Pursuant to the Wage Order and California Labor Code § 226.7(b), Plaintiff and Class Members are entitled to recover from Defendants one (1) additional hour of pay at their regular hourly rate of compensation for each meal period violation as alleged herein.

162.    Defendants were at all times aware of the Labor Code and Wage Order requirements that they provide Plaintiff and Class Members with such meal periods and were aware that Plaintiff and Class Members regularly worked more than five (5) hours in a shift without receiving mandated meal periods. Thus, Defendants willfully violated the provisions of Labor Code §§ 226.7 and 512 and the Wage Order.

163.    As a result of the unlawful conduct of Defendants, Plaintiff and Class Members have been deprived of wages and other compensation in amounts to be determined at trial and are entitled to recovery of such amounts.

164.    WHEREFORE, Plaintiff and the Class Members request relief as herein prayed for.

## TWELFTH CAUSE OF ACTION

### Failure to Provide Rest Periods or Compensation in Lieu Thereof

### (Labor Code §§ 226.7, 1198 and the IWC Wage Order)

### (Plaintiff and the Misclassified AGM and Exempt Subclasses against Employer Defendants)

165.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

166.    California Labor Code § 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California Industrial Welfare Commission. Labor Code Section 226.7 further provides that if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided.

167.    The Wage Order and California Labor Code § 226.7 provides that every employer shall provide and shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period, and that the rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof, unless the total daily work time is less than three and one-half hours.

26

168.     Throughout the Class period, on days in which Plaintiff and Class Members worked at least three and one-half hours, Defendants regularly and repeatedly required Plaintiff and Class Members to work four (4) hours and/or a major fraction thereof without providing, authorizing or permitting at least one ten (10) minute rest period during which Plaintiff and the Class Members were relieved of all duties (hereafter "rest period") per each four (4) hour period, or a major fraction thereof, worked.

169.     At all times relevant herein, Defendants failed to pay Plaintiff and Class Members a premium of one hour pay at Plaintiff's and Class Members' regular rate of pay for each rest period not provided, authorized, and permitted as alleged herein, pursuant to Labor Code § 226.7.

170.     Defendants were at all times aware of the Labor Code and Wage Order requirements that they provide Plaintiff and Class Members with the rest periods described above and were aware that Plaintiff and Class Members regularly worked more than four (4) hours or major fraction thereof without receiving mandated rest periods.  Defendants therefore at all times willfully violated the provisions of Labor Code § 226.7 and the Wage Order.

171.     Pursuant to the Wage Order and California Labor Code § 226.7(b), Plaintiff and Class Members are entitled to recover from Defendants one (1) additional hour of pay at their regular hourly rate of compensation for each workday that a rest period was not provided.  As a result of the unlawful conduct of Defendant, Plaintiff and Class Members have been deprived of wages and compensation in amounts to be determined at trial and are entitled to recovery of such amounts.

172.     WHEREFORE, Plaintiff and Class Members request relief as herein prayed for.

## THIRTEENTH CAUSE OF ACTION

### Failure to Pay Hourly and Overtime Wages

### (California Labor Code §§ 1194, 1198 and the IWC Wage Order)

### (Plaintiff and the Misclassified AGM and Exempt Subclasses against Defendants)

173.     Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

174.     Plaintiff bases this cause of action upon Defendants' willful and intentional violations of the California Labor Code and Industrial Welfare Commission requirements that Defendants pay Plaintiff and Class Members for all hours worked, including the requirement to pay premium overtime wages to Plaintiff and Class Members for work Plaintiff and Class Members performed in excess of eight hours in a workday and/or 40 hours in a workweek, and/or on the seventh consecutive day in a workweek.

27

175.    Pursuant to Labor Code § 204, as well as other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked.

176.    Labor Code § 1198 provides that "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

177.    Labor Code § 1194 provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

178.    The Wage Order provides that "such employees shall not be employed more than eight (8) hours in any workday or more than forty (40) hours in any workweek unless the employee receives one and one-half (1 ½ ) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek and for the first eight (8) on the seventh (7th) day of work and double the employee's regular rate of pay for all hours worked over eight (8) on the seventh (7th) day of work in the workweek.

179.    At all times relevant herein, Defendants required Plaintiff and Class Members on a regular and repeated basis to work shifts exceeding eight hours in a workday, to work more than 40 hours in a workweek, which hours were often not recorded, without paying overtime premium wages at a rate of no less than one and one-half times the employee's regular rate of pay, including all nondiscretionary incentive wages.

180.    At all times relevant herein, Defendants knew or had reason to know that Plaintiff and Class Members were regularly and consistently required to work more than eight hours in a day and work more than 40 hours in a week, without being paid the appropriate premium overtime wage required by Labor Code §§ 1194 and 1198, and the IWC Wage Order.

181.    At all times relevant herein, Defendants' conduct as alleged herein amounted to a uniform pattern of unlawful wage and hour practices including by which Defendants failed to accurately record all hours worked by Plaintiff and Class Members and denying payment of overtime premium wages to Plaintiff and Class Members for overtime hours worked.

182.    In committing the violations of the California Labor Code as alleged herein, Defendants engaged in an illegal attempt to avoid the payment of all earned wages and other benefits in violation of the California Labor Code, the Industrial Welfare Commission requirements and other applicable laws and regulations.

183.    As a direct result of Defendants' unlawful wage practices as alleged herein, Plaintiff and Class Members have been denied full compensation for all hours worked by Plaintiff and Class Members, including, but not limited to, premium overtime wages for overtime hours.

184.    The Labor Code and the Wage order set forth various exemptions by which certain categories of employees are exempt from the protections of the overtime laws contained in the Labor Code.  At no time during Plaintiff's and Class Members' employment did any of these exemptions apply to Plaintiff and Class Members.  Moreover, at no time were Plaintiff and Class Members subject to a valid collective bargaining agreement that would preclude the causes of action set forth in this complaint.  Rather, Plaintiff and Class Members bring this action because of Defendants' violations of non-waivable rights guaranteed to Plaintiff and Class Members by the State of California.

185.    As a direct consequence of Defendants' unlawful failure to pay Plaintiff and Class Members the full and accurate amount of all earned wages at the appropriate rate for the true number of hours worked, Plaintiff and Class Members have suffered and will continue to suffer economic injuries in an amount which is presently unknown to Plaintiff and Class Members, and which will be ascertained according to proof at trial.

186.    In performing the acts and practices in violation of California labor laws as herein alleged, Defendants have acted and continue to act intentionally, oppressively and maliciously towards Plaintiff and Class Members, with a conscious disregard for Plaintiff's and Class Members' legal rights and the consequences to Plaintiff and Class Members, and with the intent of depriving Plaintiff and Class Members of their property and legal rights and otherwise causing Plaintiff and Class Members injury, in order to increase Defendants' profits at the expense of Plaintiff and Class Members.

187.    Plaintiff and Class Members requests recovery of all unpaid wages, including overtime premium wages, in an amount according to proof, interest on such amounts, statutory costs, and the assessment of any and all statutory penalties against Defendants, all in the sums as provided by the California Labor Code and/or other applicable statutes.  In addition, to the extent that overtime compensation is owed Plaintiff and Class Members whose employment has been terminated, Defendants' conduct violates Labor Code §§ 201 and/or 202, entitling Plaintiff and Class Members to waiting time penalties under Labor Code § 203, which penalties are sought herein on behalf of Plaintiff and Class Members.

188.    WHEREFORE, Plaintiff and Class Members request relief as herein prayed for.

## FOURTEENTH CAUSE OF ACTION

### Failure to Comply with Itemized Employee Wage Statement Requirements

29

**(California Labor Code §§ 226, 1174 and 1175; and The Wage Order)**

**(Plaintiff and the Misclassified AGM and Exempt Subclasses against Employer Defendants)**

189.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

190.    Labor Code § 226(a) and the Wage Order provide that every employer shall, semimonthly or at the time of each payment of wages, furnish each of its employees an accurate itemized statement in writing showing gross wages earned, total hours worked by the employee, the applicable rate, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name of the employee and the last four digits of the employee's social security number (or an employee identification number), the name and address of the legal entity that is the employer and all applicable hourly rates in effect during the pay period and the corresponding numbers of hours worked at each hourly rate by the employee.

191.    At all times relevant herein, Defendants had a policy and practice of failing to include the total number of hours worked, the failure to report overtime pay rates, the failure to report rest and meal period premiums owed, failure to identify the gross and net wages earned, and the failure to list all applicable hourly rates.

192.    As a further result of Defendants' failure to provide Plaintiff and Class Members with accurate wage statements in accordance with Labor Code § 226 and to keep accurate time records as required by the Wage Order, Plaintiff and Class Members have suffered injuries and is entitled to penalties under Labor Code § 226 and Labor Code § 226.3 which states "that any employer who violates § 226 shall be subject to a civil penalty in the amount of $250.00 per employee per violation in an initial citation." The civil penalty provided for in this section is in addition to any other penalty provided by law, in an amount to be proven at trial.   The injuries suffered by Plaintiff and Class Members include, but are not limited to, having been, and continuing to be, forced to conduct investigations and perform mathematical computations in an attempt to reconstruct Plaintiff's and Class Members' time records; the inability to reconstruct  Plaintiff's and Class Members' time records; the inability to discern the amount of wages Plaintiff and Class Members were paid and/or the applicable wage rate; the inability to determine the number of hours, including but not limited to, overtime hours worked; the inability to determine the number of rest periods and meal periods forced to forego; the inability to determine whether Plaintiff and Class Members were compensated for all meal and rest periods of which Plaintiff and Class Members had been deprived; the inability to determine whether Plaintiff and Class Members were paid all wages due for work performed; the inability to determine the amount of wages owing and

30

unpaid; having been, and continuing to be, forced to hire attorneys and initiate a lawsuit in order to ascertain the aforementioned information.

193.    Plaintiff and Class Members are also entitled to injunctive relief to ensure compliance with this section, pursuant to Labor Code § 226(g).

194.    Pursuant to Labor Code § 226(e), each employee suffering injury as a result of a knowing and intentional failure by an employer to comply with Labor Code § 226(a) is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100.00 per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of $4,000.00, and is entitled to an award of costs and reasonable attorneys' fees.

195.    Moreover, an employee is entitled under the Labor Code § 226(h) to injunctive relief to ensure compliance with Labor Code § 226 and is entitled to an award of costs and reasonable attorneys' fees.

196.    WHEREFORE, Plaintiff and Class Members request relief as herein prayed for.

## FIFTEENTH CAUSE OF ACTION

### Failure to Pay All Wages Upon Termination

### (California Labor Code §§ 201, 202 and 203; and The Wage Order)

### (Plaintiff and the Waiting Time Penalty Subclass against Employer Defendants)

197.    Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

198.    Labor Code § 203 provides that if an employer willfully fails to pay wages owed in accordance with Labor Code §§ 201 and 202, then the wages of the employee shall continue as a penalty from the due date, and at the same rate until paid, but the wages shall not continue for more than thirty (30) days.

199.    Labor Code § 201 provides if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

200.    Labor Code § 202 provides that an employee is entitled to receive all unpaid wages no later than 72 hours after an employee quits his or her employment, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

201.    Defendants willfully failed to pay Plaintiff and Class Members all wages due, as alleged hereinabove and hereinafter, at the end of their employment within the times prescribed by Labor Code §§201 and 202 and are therefore subject to a waiting time penalty. Plaintiff and Class Members are

31

entitled to recover from Defendants the statutory penalty for each day not paid at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code § 203.

202.   WHEREFORE, Plaintiff and Class Members request relief as herein prayed for.

## SIXTEENTH CAUSE OF ACTION

### California Labor Code Private Attorneys General Act of 2004

### (California Labor Code § 2698)

### (Plaintiff, the State of California, and the Class Members/Aggrieved Employees against Employer Defendants)

203.   Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

204.   California Labor Code §§ 2698, et seq.  ("PAGA") permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code Sections enumerated in Labor Code Section 2699.5.

205.   Plaintiff is an "aggrieved employee" pursuant to Labor Code § 2699, as Plaintiff has suffered violations including, but not limited to, Labor Code §§ 201, 201.3, 202, 203, 204, 207, 208, 209, 216, 218, 218.5, 218.6, 223, 225.5, 226, 226.7, 227.3, 510, 512, 558, 1174, 1194, 1197, 1197.1, 1198, 1199, 2698 et seq., and 2699(f) and (g), 2800, and the Wage Order.

206.   Pursuant to PAGA, and in particular California Labor Code §§ 2699(a), 2699.3, and 2699.5, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for Plaintiff and the aggrieved employees, and the State of California against Defendants on behalf of herself and the aggrieved employees.

## SEVENTEENTH CAUSE OF ACTION

### Unfair Business Practices

### (California Business and Professions Code §§ 17200 et seq.  and Common Law)

### (Plaintiff and all Subclasses against Employer Defendants)

207.   Plaintiff alleges and incorporates by reference all of the allegations contained in the preceding paragraphs as though fully set forth herein.

208.   Plaintiff and Class Members suffered direct injury as a result of the Defendants' conduct, as alleged in the preceding paragraphs, and bring this action under Code of Civil Procedure § 382.  The deprivation by Defendants of Plaintiff and Class Members of wages due and lawful meal and rest periods, and Defendants' provision of inaccurate wage statements, are unlawful business practices within the meaning of Business and Professions Code § 17200, et seq.  including, but not limited to, a

32

violation of the Wage Order, regulations, and statutes, and further, whether or not in violation of the aforementioned Wage Order, regulation and statutes, amount to practices which are otherwise unfair.

209.    Under Business and Professions Code § 17200, et seq., including, but not limited to §§ 17201, 17203, and 17208, Plaintiff and Class Members assert standing on behalf of themselves as alleged herein.  Plaintiff and Class Members seek, among others, restitution of compensation due during all times relevant herein.

210.    At all times relevant herein, Defendants have committed violations of law, as described herein, including, but not limited to, violation of Labor Code §§ 201, 202, 203, 216, 218, 221, 226(a), 226.7, 227.3, 510, 512(a)1194, 1197, 1197.1, and 1198.

211.    These unlawful and unfair business practices defeat the public interest purposes of the State's labor laws, as set forth in the sections of the California Labor Code, the California Code of Regulation and the Wage Order referenced elsewhere in this complaint, all of which promote compliance with labor laws and employment regulations by participants in Defendants' industry.

212.    Defendants' unfair and unlawful business practices thus have violated the sections of the Labor Code, California Code of Regulation and the Wage Order referenced in this complaint and have imposed harm on their employees and their competitors and will continue to do so until abated.  As a result of these unfair and unlawful business practices, Defendants have retained monies belonging to Plaintiff and Class Members, and they have been unjustly enriched at  Plaintiff's and Class Members' expense.  Plaintiff and Class Members are entitled to restitution of the wages and monies withheld and retained by Defendants during the relevant period and a preliminary and permanent injunction requiring Defendants to pay all wages and sums due to Plaintiff and Class Members, to provide mandatory rest and meal breaks, and to provide accurate and complete wage statements.

213.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered injury and loss of money.

214.    This action will result in the enforcement of an important right affecting the public interest.  The conduct of Defendants as alleged herein has been and continues to be unfair, unlawful and harmful to Plaintiff and Class Members and the general public.  Accordingly, under Code of Civil Procedure § 1021.5, Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees according to proof.

215.    WHEREFORE, Plaintiff and Class Members request relief as hereinafter prayed for.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendants and DOES 1 through 10, inclusive, and each of them, as follows:

1. For compensatory damages, including lost wages, earnings, employee benefits, liquidated damages, and all other sums of money, together with interest thereon at the prevailing rates and according to proof;

2. For general, special, and incidental damages and amounts for emotional and physical distress according to proof;

3. For punitive damages in an amount to be determined at trial sufficient to punish, penalize and/or deter Defendants;

4. For prejudgment interest and interest on the sum of damages awarded to the maximum extent permitted by law;

5. For unpaid premium wages and penalties and civil penalties, including under PAGA;

6. For restitution of unpaid wages and penalties to Plaintiff, pursuant to Business and Professions Code § 17200 et seq.;

7. For all available injunctive, equitable and other relief, including remedies authorized by California Government Code section 12965(c) and Business and Professions Code § 17200 et seq;

8. For "affirmative relief" as defined in California Government Code section 12926(a);

9. For attorneys' fees and costs as provided by statute; and

10. For such other and further relief as the Court may deem equitable and appropriate.


Respectfully submitted this __th day of October 2025.

Stambelos Law Office

/s/ *Patricia Stambelos*
Patricia Stambelos
*Attorneys for Plaintiff Amanda Baldino-Miller*

FIRST AMENDED COMPLAINT FOR DAMAGES, PENALTIES AND INJUNCTIVE RELIEF
CASE NO. 1:23-CV-01613-BAM